JOSEPH P. RUSSONIELLO (CASBN 44332)
United States Attorney

BRIAN J. STRETCH (CASBN 163973)
Chief, Criminal Division

W. DOUGLAS SPRAGUE (CASBN 202121)
Assistant United States Attorney

   1301 Clay Street; Suite 340-S
   Oakland, California 94612
   Telephone: (510) 637-3771
   Facsimile: (510) 637-3724
   E-mail: doug.sprague@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>KENNETH EUGENE HOLLOWAY,<br><br>    Defendant. | No. CR 07-0344 CW<br><br>GOVERNMENT'S SENTENCING MEMORANDUM<br><br>DATE: April 16, 2008<br>TIME: 2:00 p.m.<br><br>Honorable Claudia Wilken |

     For the reasons set forth below and in the Presentence Investigation Report (PSR), the government respectfully requests that the Court accept the proposed Plea Agreement and sentence defendant Kenneth Eugene Holloway to 156 months imprisonment consecutive to any other undischarged term of imprisonment, 5 years of supervised release (including a suspicionless search clause as described below), and the $200 mandatory special assessment.

**FACTUAL BACKGROUND**

     On August 25, 2006, while on federal supervised release, defendant unsuccessfully attempted to flee from Oakland Police officers after he was pulled over with a loaded firearm and 5.6 grams of crack cocaine in his car. During his attempted flight, he entered an innocent

person's home, trying to hide there. He was arrested shortly thereafter, charged in state court, and somehow released. He absconded.

While a fugitive from the state charges, in November 2006 defendant and an accomplice robbed a jewelry store in El Cerrito. After defendant and his accomplice entered that store, defendant pointed a handgun at the owner and ordered the store owner to the back room. Defendant ordered the store owner to lay face down on the floor. Defendant and his accomplice tied up the store owner, including tying cloth in his mouth, then stole approximately $50,000 worth of jewelry and all the cash in the store. Defendant was arrested in March 2007 for this crime, and he has been in custody since then.

### Defendant's Criminal History

Defendant's criminal history runs essentially unbroken from the age of 13 to his current age, 41. When he was 13, defendant received wardship probation after he beat up and robbed a student who refused to give defendant a quarter. (PSR, ¶ 29.) Just a few months later, defendant and three others ganged up on, beat up, and robbed a young girl. (PSR, ¶ 30.) A few months later defendant robbed, yet again, this time for a sweatsuit and cash. (PSR, ¶ 31.) A few months later, now at age 14, defendant robbed a neighbor and allegedly held a gun to a young boy's head during that robbery. (PSR, ¶ 32.) A few months after that, and after an intervening escape from a bus transporting him to juvenile hall, defendant, in the midst of yet another robbery, forced a 23-year old female Berkeley student down an alley at gunpoint, apparently to rob her. He took her purse, which contained 75 cents. She turned around, so defendant murdered her so she could not identify him.[1]

Defendant's mere 5-year incarceration in the California Youth Authority was marked by consistent violent behavior and included raping another ward, threatening to kill another ward, refusing to participate in counseling, and requiring staff to shackle him to his bed as a result of his violent behavior. (PSR, ¶ 35.) As set forth in the PSR, one assessment of his time there was

---

[1] A few hours later, defendant, still armed with a gun, robbed a liquor store. That charge was dropped, however, as were a vandalism charge and a charge of forcible rape of a 13-year old girl, all dropped in lieu of the murder plea.

GOVT. SENT. MEM.;
CR 07-0344 CW                                    2

as follows:

> He poses an extreme danger to society. He continues to be highly assaultive and has no respect for the rights of others. He lacks the insight and understanding to express genuine emotions such as remorse for his victim and hatred toward females. [His] term will expire in November 1987. The thought of this ward being released in November 1987 is frightening.

(PSR, ¶ 35.)

Just a few months after his release from CYA, defendant sold crack cocaine to an undercover officer. Defendant pointed the shotgun at the undercover officer and threatened retaliation if defendant learned the officer was, in fact, an officer. In addition to the shotgun, additional crack cocaine, bullets, and a stolen hand grenade were found near defendant. (PSR, ¶ 36.) Defendant received a sentence of 100 months for this crime; he appears to have served about 64 months of that sentence.

A few years later, defendant and two accomplices committed an armed bank robbery. Defendant dragged the bank manager across the room and struck another employee with the butt of the semi-automatic pistol he was carrying. After defendant was convicted of bank robbery, carrying a firearm in furtherance of a violent crime, and being a felon in possession of a firearm, this Court sentenced him to 30 years in prison. Unfortunately, the bank robbery and 924(c) counts were reversed by the Ninth Circuit. Upon remand, this Court sentenced defendant to the maximum term allowable: 10 years in federal prison followed by three years of supervised release.

A few months after his release from that sentence, defendant committed the instant offense. Then, a few months after that, he committed the above-described armed robbery of the jewelry store on San Pablo Avenue in El Cerrito.[2]

---

[2] Apparently almost immediately after the Plea Agreement in this case was entered, defendant pleaded guilty in state court, agreeing to a sentence of 164 months. He has not yet been sentenced in state court. Undersigned government counsel's understanding, however, is that sentence will run concurrently to the federal sentence and that, as a result, defendant will serve little or no additional time for that crime.

GOVT. SENT. MEM.;
CR 07-0344 CW                                    3

The Sentencing Guidelines

As the parties agreed in the Plea Agreement and as the Probation Officer determined, there is no dispute that the total offense level for Count One (possession with intent to distribute 5.6 grams of crack cocaine) is 21. The Probation Officer correctly determined defendant's Criminal History Category to be V, resulting in a guidelines range of imprisonment of 70-87 months. Adding the mandatory minimum consecutive 60 months for Count Three (possessing a firearm in furtherance of a drug trafficking crime) would result in a range of 130-147 months. If ever there were a case of understated criminal history, however, this is it. Defendant has six convictions for violent crimes, including murder, that add a combined total of <u>zero</u> points to his criminal history score. Defendant does not meet the technical requirements of being an Armed Career Criminal or a Career Offender, though the reality is that he is both. His criminal history should be considered to place him in Criminal History Category VI. If defendant's Criminal History Category were VI, his range would be 77-96 months, plus a minimum consecutive 60 months, or a low-end range of 137-156 months.

In addition, defendant violated his terms of supervised release by committing both the instant offense and the jewelry store robbery. The guideline range of imprisonment for these Grade A violations is 15-21 months, and that is after defendant gets the benefit of his criminal history as of 1997, which appears to have been Category II. Adding the 15-21 months to the 137-156 months noted above, an appropriate *low-end* overall guideline range would be 152-177 months. Indeed, defendant has agreed that he should be sentenced to a range of imprisonment of 144-156 months. Given his conduct in this case and his criminal history, he should be sentenced to a term of 156 months imprisonment.

**Additional Supervised Release Condition Number 6 Should be Modified**

Furthermore, as one of the conditions of his supervised release, defendant should be subject to search at any time with or without cause. On page 4 of the "Sentencing Recommendation" attached to the PSR, the Probation Officer suggests that defendant, while on supervised release, shall submit to a search by a Probation Officer based on "reasonable suspicion". (Additional Condition 6.) Considering this defendant's criminal history and his

GOVT. SENT. MEM.;
CR 07-0344 CW                                4

1  conduct in this case, and in light of the Ninth Circuit's decision in <u>United States v. Betts</u>, 511
2  F.3d 872 (9th Cir. Dec. 14, 2007), the search clause applicable during defendant's term of
3  supervised release should be expanded.  Specifically, the government submits that this condition
4  should read as follows:

> The defendant shall submit his person, residence, office, vehicle, or any property under his control to a search.  Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time with or without cause.  Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

In <u>Betts</u>, the Ninth Circuit upheld a substantially similar (and, the government submits, identical in effect) search clause, even though the defendant in that case had *no criminal history*. In doing so, the Ninth Circuit relied on <u>Samson v. California</u>, 126 S.Ct. 2193 (2006), which held that a similarly worded condition imposed upon all parolees in California did not violate the Fourth Amendment even though the condition did not require reasonable suspicion.  <u>Betts</u>, 511 F.3d at 876 (citing <u>Samson</u>, 126 S.Ct. at 2202).  The Ninth Circuit noted that in <u>Samson</u>, the Supreme Court had considered the high risk of recidivism for people convicted of crimes and reasoned that a reasonable suspicion requirement would give parolees greater opportunity to anticipate searches and hide criminal conduct.  <u>Betts</u>, 511 F.3d at 876 (citing <u>Samson</u>, 126 S.Ct. at 2201).  Because there was "no sound reason for distinguishing parole from supervised release" with respect to this condition, and noting that the Court in <u>Samson</u> even drew the analogy to supervised release, the expansive search condition not requiring reasonable suspicion was appropriate.  <u>Id</u>.  <u>See</u> also <u>United States v. Hanrahan</u>, 508 F.3d 962 (affirming the imposition of a suspicionless search condition of supervised release after felon-in-possession conviction).

Such a condition is appropriate here as well.  As set forth above, defendant's criminal history is remarkably constant and severe.  While he is serving the portion of his sentence that is his term of supervised release, no law enforcement officer should need reasonable suspicion to search him.

## **CONCLUSION**

For these reasons, the government respectfully requests that this Court sentence the

GOVT. SENT. MEM.;
CR 07-0344 CW                                              5

1 | defendant to 156 months imprisonment (96 months on Count One, 60 months on Count Three to
2 | be served consecutively to Count One, and 21 months on the supervised release violation to be
3 | served concurrently with Count Three, for a total term of imprisonment of 156 months
4 | consecutive to any other undischarged term of imprisonment), 5 years of supervised release, and
5 | the $200 special assessment.

6 | DATED:     April 11, 2008                                  Respectfully submitted,

7 |                                                            JOSEPH P. RUSSONIELLO
  |                                                            United States Attorney

9 |                                                                   /s/
  |                                                            W. DOUGLAS SPRAGUE
10|                                                            Assistant United States Attorney

GOVT. SENT. MEM.;
CR 07-0344 CW                                6